**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

CITIBANK, N.A.,
as Trustee for American Home Mortgage
Assets Trust 2006-3 Mortgaged-Backed
Pass-Through Certificates, Series 2006-3,

    Plaintiff,

v.                                                                                       CASE NO. 2: 09-cv-83-FtM-36DNF

CHRISTOPHER DALESSIO, *et al.*,

    Defendants.

_____

CHRISTOPHER DALESSIO

    Third Party Plaintiff,

v.

AMERICAN HOME MORTGAGE
SERVICING, INC.

    Third Party Defendant
_____/

**ORDER AND OPINION**

**I.    INTRODUCTION**

Citibank, N.A. ("Citibank") filed a complaint in the Circuit Court of the Twentieth Judicial Circuit, in and for Lee County, Florida, for mortgage foreclosure based on payment default and to reestablish a lost note.[1] In response to the foreclosure complaint, Christopher Dalessio ("Dalessio")

---

[1] Citibank abandoned Count II of its Complaint to Reestablish a Lost Note (Dkt. 2, Dkt. 47, p. 17).

filed an answer, affirmative defenses, and counterclaims against Citibank and a third-party complaint against American Mortgage Servicing, Inc. ("AHMSI").[2]  Dalessio sought to avoid foreclosure and to assert entitlement to affirmative relief under the Truth in Lending Act ("TILA").  A non-jury trial was held before the Court on September 16, 2010.  At the trial, the Court heard testimony from Christopher Dalessio and Roger Kistler.

## II.  FEDERAL JURISDICTION

On February 13, 2009, AHMSI removed this case to federal court.  Removal was based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441(b), and 1441(c).  Federal question jurisdiction arose under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"), and the Fair Debt Collection Practice Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").

## III.  FINDINGS OF FACT

The following facts were admitted by the parties and presented as evidence at the trial.  Citibank is a national bank regulated by the Office of the Comptroller of the Currency.  Dalessio is a Florida resident residing in Lee County, Florida.   *See* Dkt. 86 ("Bench Trial Transcript," hereinafter referenced as "Trial Tr."). Dalessio moved to his present address in Cape Coral, Florida in January 2006.  Trial Tr. p. 25:25-26:3.  When he initially purchased his home, he obtained a 30-

---

[2]  The parties have settled and/or abandoned the following claims: 1) the Florida Fair Collection Practice Act claim settled with American Home Mortgage Service, Inc.; 2) Count One to Re-Establish the Lost Note has been abandoned; 3) the Second Affirmative Defense of Dalessio; 4) the Fourth Affirmative Defense of Dalessio; 5) the Sixth Affirmative Defense of Dalessio; 6) the Ninth Affirmative Defense of Dalessio; 7) Count Two of Dalessio's Counterclaim; 8) Count Three of Dalessio's Counterclaim; 9) Count Four of Dalessio's Counterclaim; 10) Count Five of Dalessio's Counterclaim; 11) Count Six of Dalessio's Counterclaim; and 12) Count Seven of Dalessio's Counterclaim. Trial Tr. 8:22-10:4; *see* Dkt. 47, p. 17.

year fixed mortgage at a rate of approximately 6.75%. Trial Tr. p. 26:4-15.  In June 2006, Dalessio received a solicitation in the mail from the Loan Corporation and decided to re-finance his mortgage. Trial Tr. p. 27:16-28:3.  "The Solicitation" made representations including, but not limited to the following:

      a.     The loan was an "Asset Builder Loan;"

      b.     "Imagine receiving a 50% off coupon with your mortgage statement every month;"

      c.     Real estate is an appreciating asset;

      d.     "Did you know that the Asset Builder Mortgage has a minimum monthly payment equivalent to less than half that of a 30 year fixed loan payment–for any given amount financed?  That's a guaranteed monthly savings of 50% for the next 5 years!"

      e.     The Loan Corporation was offering an "amazing loan product;"

      f.     A testimonial statement, which proclaimed,"If I had known about this when I first purchased my home seven years ago, I would have had it entirely paid off by now."

Ex. 91

Dalessio contacted The Loan Corporation and spoke with Ryan Duncan about refinancing his home after receiving the Solicitation. Trial Tr. pp. 28:4-7; 29:21-24.  Based on his conversations with Duncan, Dalessio believed that his loan would be fixed for five years at a rate of 2.5%. Trial Tr. p. 41:4-8.  Dalessio communicated solely with Mr. Duncan about the loan transaction.

Delassio obtained the loan with Ryan Duncan of the Loan Corporation.  He executed a number of preliminary loan documents on June 14, 2006, two weeks before closing the loan refinancing on June 29, 2006. Trial Ex. 3-18.  Dalessio does not remember signing these documents.

The loan was offered through American Brokers Conduit.[3] Trial Tr. p. 31:1-4. Dalessio closed on the loan with American Brokers Conduit on June 29, 2006. Trial Tr. p. 30:21-25. On the night of the closing, a man came to Dalessio's door, alone. Trial Tr. p. 86:6-14. No one explained the documents to Dalessio, and the man could not answer questions. Trial Tr. pp. 87:12-23, 90:12-13. Dalessio did not read the documents thoroughly or ask anyone about the information contained in the documents prior to signing them. Trial Tr. pp. 85:21-86:6; 88:7-10; 89:20-22.

As part of the June 2006 loan refinance, Dalessio executed an Adjustable Rate Note on June 29, 2006 in the amount of $235,000, and the mortgage was to secure the payment of the note. Trial Tr. p. 4:14-16; 41:20-42:3. In the documents signed by Dalessio, the following information was included: 1) an annual percentage rate of 6.745%; 2) twelve (12) payments in the amount of $774.98; 3) twelve (12) payments in the amount of $833.10; 4) four hundred thirty-three (433) payments in the amount of $1,581.89; and 5) a final payment in the amount of $1,587.93. Trial Tr. pp. 48:20-49:14; Ex. 19. The initial interest rate of 2.5% would only last for one month after the inception of the loan. Trial Tr. p. 51:5-19; Ex. 26. The documents included Truth in Lending Statement Disclosures that listed different annual percentage rates of 9.055% from The Loan Corporation and 8.972% from American Brokers Conduit. Trial Tr. p. 54:18-55:12; Ex. 22; 56:25-57.3. The loan included an adjustable rate note and explained that the loan was a negative amortization loan. Trial Tr. p. 56:5-20; Ex. 25; 67:20-70:12; Ex. 41. After the closing Dalessio called Duncan from The Loan Corporation who assured him that he received the 2.5% interest rate loan. Trial Tr. p. 87:25-88:1, 89:23-14.

Dalessio noticed that his principal balance was increasing each month on his mortgage. Trial

---

[3] For purposes of trial, American Brokers Conduit and AHMSI are treated as one in the same. *See* Trial Tr. p. 104:19-25; Ex. 84.

Tr. p. 71:22-72:12. He then sought an explanation of the increase and learned that he had a negative amortization loan with an interest rate that changed each month. Trial Tr. p. 72:12-20. He eventually stopped making payments in September 2008. Trial Tr. pp. 74:14-22; 76:10-13; 77:4-7; 79:19-80:11; 81:1-3. After Dalessio failed to make his payment in September 2008, American Brokers Conduit sent him a letter notifying him that he was in default. Ex. 60. Dalessio, through counsel, notified American Brokers Conduit, by letter dated December 23, 2008, that he was rescinding the loan transaction. Trial Tr. p. 7:20-25; Ex. 61. The current market value of the property is $73,000. Trial Tr. p. 8:1-2.

## IV.   LEGAL ANALYSIS

### A.   Complaint - Mortgage Foreclosure

"To foreclose upon a promissory note, the plaintiff must be the 'holder' in order to be the real party in interest. The 'holder' is the 'person who is in possession of a document of title or an instrument or an investment security drawn, issued or endorsed to him or to his order or to the bearer or in blank.'" *Troupe v. Redner*, 652 So.2d 394, 395-96 (Fla. 2d DCA 1995)(citations omitted); *see* Fla. Stat. § 671.201(21)(2010); *Mortg. Elec. Registration Sys. v. Azize*, 965 So.2d 151, 153 (Fla. 2d DCA 2007)(same). Once the plaintiff establishes that it can enforce the promissory note in a foreclosure action, it must also demonstrate that the defendant failed to pay pursuant to the note. *See Cherry v. Chase Manhattan Mortg. Corp*, 190 F. Supp. 2d 1330, 1333-34 (M.D. Fla. 2002)(The mortgagor's "failure to tender payments from the escrow account or make deposits with the court is more than just a 'technical breach' of the mortgage and note."); *Smiley v. Manufactured Hous. Assocs. III Ltd. Partnership*, 679 So.2d 1229, 1232 (Fla. 2d DCA 1996)("'Failure to pay goes to the heart of the agreement between the mortgagor and mortgagee, and is not a mere technical

breach.'")(quoting *Pezzimienti v. Cirou*, 466 So. 2d 274 (Fla. 2d DCA 1985)).

In this case, Citibank presented sufficient evidence at trial to establish its foreclosure action against Dalessio. First, Citibank demonstrated that it holds the note endorsed in blank and is, therefore, entitled to enforce the note and foreclose the mortgage. Trial Tr. p. 99:9-114:21; Ex. 70, 84, 75. The original note and mortgage were entered into evidence at trial. Second, it is undisputed that Dalessio defaulted under the note and mortgage by failing to make the payments due from September 2008 and thereafter. Third, Dalessio received due and appropriate notice of his default under the note and mortgage and failed to cure such default within the time permitted under the note and mortgage or at any time thereafter. Finally, Citibank demonstrated that it holds a lien under the note and mortgage in the amount of $284,037.49, which encumbers the subject property located in Lee County, Florida and described as

> LOTS 13 AND 14, BLOCK 2266, CAPE CORAL UNIT 33, AS RECORDED IN PLAT BOOK 16, PAGES 40 TO 61, IN THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA.[4] Ex. 69.

Therefore, Citibank may recover the amount of the mortgage indebtedness unless the Court finds a limited circumstance to deny the request. *See Cherry*, 190 F. Supp. 2d at 1334 (citing *First Texas Savings Assoc. v. Comprop. Investment* Properties, Ltd, 752 F. Supp. 1568, 1575 (M.D. Fla. 1990)). The Court now outlines its determinations on the affirmative defenses asserted by Dalessio. Trial Tr. p. 10:5-25. The remaining affirmative defenses are Affirmative Defenses Number One, Five, Seven and Eight.

---

[4] The property address is: 2111 NE 28th Street, Cape Coral, Florida 33909.

1.    **Affirmative Defense No. 1: Failure to State a Cause of Action Based on Standing**

"The party seeking foreclosure must present evidence that it owns and holds the note and mortgage in question in order to proceed with a foreclosure action." *Lizio v. McCullom*, 36 So.3d 927, 929 (Fla. 4th DCA 2010). A plaintiff must tender the original promissory note to the trial court or seek to reestablish the lost note under Florida Statute Section 673.3091. *State Street Bank and Trust Co. v. Lord*, 851 So.2d 790, 791 (Fla. 4th DCA 2003). If the note does not name the plaintiff as the payee, the note must bear a special indorsement in favor of the plaintiff or a blank indorsement. *Riggs v. Aurora Loan Servs., LLC*, 36 So.3d 932, 933 (Fla. 4th DCA 2010). Alternatively, the plaintiff may submit evidence of an assignment from the payee to the plaintiff. *Verizzo v. Bank of N.Y.*, 28 So.3d 976 (Fla. 2d DCA 2010); *Stanley v. Wells Fargo Bank*, 937 So.2d 708 (Fla. 5th DCA 2006).

Here, Citibank demonstrated at trial that it is the holder of the promissory note executed by Dalessio that serves as the basis of this foreclosure action. Dalessio's mortgage was a part of the Pooling and Servicing Agreement between American Home Mortgage Assets, LLC. Trial Tr. p. 102:7-22; Ex. 70. Citibank, through the testimony of Roger Kistler, who had the authority to testify on behalf of Citibank (*see* Trial Tr. p. 105:12-107:2), established how Citibank acquired the documents and obtained Dalessio's mortgage. Trial Tr. p. 104:12-18. The mortgage was transferred on July 28, 2006 to a trust of which Citibank is the trustee. Trial Tr. p. 108:16-23, 110:10-13. As previously noted, Citibank also tendered the original note to the Court. Trial Tr. p. 109:19-110:9. The original mortgage note was endorsed without recourse to the trustee in blank. Trial Tr. 102:2-9; Ex. 70. As such, the Court holds that Citibank has proper standing to pursue this foreclosure action as the holder of the note which it obtained through the Pooling and Servicing Agreement.

### 2. Affirmative Defense No. 5: Non-Holder in Due Course

The term "holder in due course" means the holder of an instrument if: (a) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and (b) the holder took the instrument: (1) for value; (2) in good faith; (3) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series; (4) without notice that the instrument contains an unauthorized signature or has been altered; (5) without notice of any claim to the instrument described in section 673.3061; and (6) without notice that any party has a defense or claim in recoupment described in section 673.3051(1). Fla. Stat. § 673.3021(1).

As previously stated, Citibank demonstrated that it has standing to pursue this foreclosure action against Dalessio because it is the proper holder of the note. Citibank is a holder in due course pursuant to Fla. Stat. § 673.3021(1). It took the note and mortgage free and clear of any claims or affirmative defenses that Dalessio has asserted in connection with the origination of the mortgage loan. The Court finds that Citibank is the holder in due course of the note.

### 3. Affirmative Defense No. 7: Economic Waste and Unclean Hands

Generally, the economic waste doctrine applies to the measure of damages, as opposed to being an affirmative defense. *Austin-Westshore Const. Co., Inc. v. Federated Dept. Stores, Inc.*, 934 F.2d 1217, 1225 (11th Cir. 1991)("[T]he economic waste measure of damages was correctly applied by the jury as an alternative measure of damages."); *see Grossman Holdings Ltd. v. Hourihan*, 414 So.2d 1037, 1038-1039 (Fla. 1982)(discussing the application of the economic waste doctrine to the measure of damages in a breach of contract case); *Heine v. Parent Const. Inc.*, 4 So.3d 790, 792-93

(Fla. 4th DCA 2009)(same).

As for the affirmative defense of unclean hands, such a defense is sufficient to prevent foreclosure. *Quality Roof Servs., Inc. v. Intervest Nat'l Bank*, 21 So.3d 883, 885 (Fla. 4th DCA 2009). To assert the defense, the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted and that the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by the plaintiff's conduct. *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993).

Dalessio asserts that pursuant to the Pooling and Service Agreement, Citibank is required to maximize the return to investors or minimize the losses to the investors (Dkt. 3, p. 7). Based on this belief, Dalessio contends that "if [Citibank] is successful in this foreclosure it will sell the house below the current fair market value and violate the requirements of the Pooling and Servicing Agreement." *Id*. As such, granting foreclosure would be "inherently inequitable to [Dalessio], the community, and . . . the investors in [Citibank]." *Id*. Despite making these assertions, Dalessio produced no evidence to support either his claim that economic waste should reduce any damages or that unclean hands prevent Citibank from pursuing its foreclosure action.

### 4. Affirmative Defense No. 8: Truth in Lending Violations

The Court finds that Dalessio's TILA violations, asserted as an affirmative defense, do not prevent Citibank's foreclosure action for two reasons: 1) Dalessio relied only on the oral representations from Duncan, which expressly contradict the terms of the loan documents for which he is presumed to have knowledge of their contents; 2) American Brokers Conduit did not violate the TILA by failing to make material disclosures, specifically through underdisclosing the 23rd payment or overdisclosing the total payments of the loan.

### a. *Dalessio did not rely on any of the representations in the loan documents.*

As a general matter, "'[a] party who signs an instrument is presumed to know its contents. . . . He cannot avoid his obligations thereunder by alleging that he did not read the contract, or that the terms were not explained to him, or that he did not understand the provisions.'" *Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1308-09 (M.D. Fla. 2010)(quoting *Benoay v. E.F. Hutton & Co.*, 699 F. Supp. 1523, 1529 (S.D. Fla. 1988)); *see Swift v. North American Co. for Life and Health Ins.*, 677 F. Supp. 1145, 1150 (S.D. Fla. 1987)("The rule that one who signs a contract is presumed to know its contents has been applied even to contracts of illerate persons on the ground that if such persons are unable to read, they are negligent if they fail to have the contract read to them."). Furthermore, a party's purported reliance on oral misrepresentations, which contradict the express terms of loan documents, are unreasonable as a matter of law. *Linville*, 697 F. Supp. 2d at 1308.

At trial, Dalessio made it clear that he did not review the loan documents prior to or at the closing. Furthermore, he did not ask anyone to explain the documents to him after he received them at the closing. The TILA statements contained interest rates of 8.972% and 9.055%. Instead, Dalessio relied solely on the oral representations from Duncan relating to his new mortgage. It was based on this information that Dalessio believed his loan was for a fixed term of five years at an interest rate of 2.5%. Furthermore, the rate of 2.5% was disclosed in the loan documents as being for a term of one month, immediately after the inception of the loan agreement. Based on this evidence, Dalessio cannot avoid his obligation under the loan documents because he did not read them or have them explained to him.

        **b.**    *American Brokers Conduit did not violate the TILA by underdisclosing the 23rd payment or overdisclosing the total payments.*

The term "material disclosures" means the disclosure, as required by the Act, of the annual percentage rate,[5] the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 1639(a) of the Act. 15 U.S.C.A. 1602(u)(2006); 12 C.F.R. 226.23(a)(3) n. 48 (2009). Notably, the disclosure of an amount or percentage which is greater than the amount or percentage required to be disclosed under the Act does not in itself constitute a violation of the Act. 15 U.S.C.A. 1602(z); *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 756 (7th Cir. 2000). There are circumstances when overdisclosure may result in a violation of the TILA. "Where a rate is overdisclosed, a consumer may pass up what is in reality a more favorable interest rate for a less favorable one. When this happens consumers are harmed, perhaps without even knowing it, by the creditor's failure to accurately disclose the interest rate." *Williams*, 204 F.3d at 757.

        **(1)**    <u>**Underdisclosing the 23rd Payment**</u>

Based on the expert report of Kevin Byers, "the 11th scheduled monthly payment of $833.10 (the 23rd scheduled payment overall, due July 1, 2008) pushes the unpaid principal balance to

---

[5] As a general rule, the annual percentage rate is a measure of the cost of credit, expressed as a yearly rate. 12 C.F.R. 226.14(a). An annual percentage rate shall be considered accurate if it is not more than 1/8 of 1 percentage point above or below the annual percentage rate determined in accordance with the Act. *Id*. An error in disclosure of the annual percentage rate or finance charge shall not, in itself, be considered a violation of the Act if: (1) the error resulted from a corresponding error in a calculation tool used in good faith by the creditor; and (2) upon discovery of the error, the creditor promptly discontinues use of that calculation tool for disclosure purposes, and notifies the Board in writing of the error in the calculation tool. *Id*.

$258,881.67, or $381.67 above the maximum of $258,500.00 as outlined in the Adjustable Rate Note (110% of the original loan amount)." Ex. 83, pp. 4-5. Upon reviewing the Truth-in-Lending Disclosure Statement, Byers found that the statement appeared to disclose "one payment too many using the minimum payment of $833.10, and should rather reflect the required recast after the 22nd scheduled payment (the 10th payment of $833.10) to avoid breaching its maximum." *Id*. at p. 5. In this particular instance, Dalessio would have paid less than what was expected. Therefore, the underdisclosure of the 23rd payment is not a TILA violation.

### (2)    Overdisclosing the Total Payment

According to Byers' expert report, "[t]he total of projected scheduled payments at maturity . . . equals $930.499.01, or $2.937.81 less than the $933,436.82 as disclosed by [American Brokers Conduit] on the Final Truth-in-Lending Disclosure Statement." Ex. 83, p. 5. This material disclosure of total payments was overdisclosed, as it appears that American Brokers Conduit stated that Dalessio would owe more than what was necessary on the loan. As with the underdisclosure of the 23rd payment, the overdisclosure of the total payment would result in Dalessio paying less than what was expected of him. Therefore, this overdisclosure is not a TILA violation.

### B.    Counterclaim: Truth in Lending Rescission

A consumer may exercise the right to rescind a mortgage or loan agreement under the Truth in Lending Act until midnight of the third business day following consummation, delivery of the notice required under the Act, or delivery of all material disclosures, whichever occurs last. 12 C.F.R. 226.23(a)(3). If the required notice or material disclosures are not delivered, the right to rescind shall expire three (3) years after consummation upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. *Id*.

In this case, the Court finds that there were no violations of the Truth in Lending Act by failing to make material disclosures. As such, Dalessio only had three days until after the consummation of the loan to rescind. Because he did not seek to rescind the loan within three days of executing the promissory note on June 29, 2006, Dalessio cannot new rescind. Dalessio's attempt to rescind the loan in December 2008 is ineffective.

## V.   CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff Citibank presented sufficient evidence at trial to establish the necessary elements of **Count I, Mortgage Foreclosure**.

2. Defendant Dalessio did not present sufficient evidence to establish Affirmative Defenses for Failure to State a Cause of Action Based on Standing (No. 1), Non-Holder in Due Course (No. 5), Economic Waste and Unclean Hands (No. 7), and Truth in Lending Violations (No. 8).

3. Defendant Dalessio did not present sufficient evidence to establish the necessary elements of his counterclaim, Count I, Truth in Lending Rescission.

4. The Court finds in favor of Citibank as to Count I, Mortgage Foreclosure. Under paragraph 7(E) of the note and paragraph 9 of the mortgage, Citibank is entitled to an award of its attorneys' fees and costs.

5. The Court finds in favor of Citibank as to Count I of Defendant Dalessio's counterclaim.

6. The Clerk is directed to enter judgment in favor of Plaintiff on Count I of Dalessio's counterclaim.

7. Plaintiff Citibank shall submit a Final Judgment of Foreclosure to the Court within **FOURTEEN (14) DAYS** from the date of this Order.

**DONE AND ORDERED** at Ft. Myers, Florida, on December 10, 2010.

Charlene Edwards Honeywell
United States District Judge

COPIES TO:
COUNSEL OF RECORD